**EXHIBIT A**



**MAHONEY LAW GROUP, APC**

Joshua D. Klein, Esq.
(562) 590-5550 phone
(562) 590-8400 facsimile
jklein@mahoney-law.net

May 20, 2019

**VIA ELECTRONIC MAIL AND CERTIFIED MAIL No.:**
Jason Guerra, Esq.
**Guerra Law, APC**
100 Oceangate, 12th Floor
Long Beach, CA 90802
jason@guerra-law.com

**PERSONAL AND CONFIDENTIAL
PRIVILEGED OFFER TO COMPROMISE
(CALIFORNIA EVIDENCE CODE §§ 1152, 1154)**

Re: *Johnny Garcia v. List Logistics*
Case No.: 19STCV13310

Mr. Guerra,

As you are aware, Johnny Garcia ("Mr. Garcia") has retained Mahoney Law Group, APC to represent him with respect to claims arising out of his employment with List Logistics ("Employer" or "Logistics"). Our investigation of the facts reveals that Employer discriminated against Mr. Garcia on the basis of his disability, failed to engage in the interactive process with Mr. Garcia, failed to accommodate Mr. Garcia, retaliated against Mr. Garcia for his medically-required absences, wrongfully terminated Mr. Garcia, intentionally inflicted emotional distress on Mr. Garcia, and committed unfair business practices in violation of California's Unfair Competition Law ("UCL").

As a result, Logistics is liable to Mr. Garcia under various provisions of the California Labor Code, the Fair Employment and Housing Act (FEHA), and the UCL.

This letter has been prepared and sent for the sole purpose of encouraging settlement discussions. Its contents, and any related communications, are privileged and confidential under California Evidence Code sections 1152 and 1154.

**I.   CIRCUMSTANCES SURROUNDING MR. GARCIA'S EMPLOYMENT WITH DEFENDANT**

Mr. Garcia began his employment with Logistics on February 19, 2018, as an Inventory and Receiving Manager. Mr. Garcia began with a salary of forty-five thousand seven hundred sixty

Johnny Garcia v. List Logistics
May 20, 2019
Page 2 of 7

dollars ($45,760.00), scheduled to be increased to fifty-two thousand dollars ($52,000.00) on August 19, 2018. Mr. Garcia also received additional benefits including health insurance, two (2) weeks' vacation, and participation in a company 401(k) plan.

As an Inventory and Receiving Manager, Mr. Garcia had oversight responsibility of all employees with inventory and receiving functions at Defendant's Rancho Dominguez facility. The vast majority of Mr. Garcia's duties could be performed while seated, and those that could not, such as routine walks around the facility, could be delegated.

Between May and October of 2018, Mr. Garcia suffered from medical complications which necessitated multiple emergency room visits and multiple surgeries. As a result, Mr. Garcia became disabled and was placed on medical leave after work on June 27, 2018.

On January 28, 2019, Mr. Garcia sent Defendant a doctor's note which cleared Mr. Garcia to return to work the following week with restrictions. Mr. Garcia was restricted only form lifting over 15 pounds and from repeated bending, neither of which prevented him from performing all essential functions of his role as an Inventory and Receiving Manager.

On January 29, 2019, Defendant's General Manager Rich Hvozdovic responded to Mr. Garcia that "at this time, the company does not have a position that can accommodate the restrictions placed on you by your doctor." Defendant did not attempt to discuss the specifics of why this was with Mr. Garcia, which came as a surprise to Mr. Garcia who knew that his job could be performed despite his restrictions. Defendant refused to allow Mr. Garcia to return to work, prompting Mr. Garcia's physician to extend his medical leave to March 11, 2019.

On March 4, 2019, Defendant's Human Resources representative Allison Davis sent Mr. Garcia a letter informing him that he was terminated effective immediately. Ms. Davis stated that Mr. Garcia's termination was in fact a layoff made under the pretext of "a slowdown in the activity" at the Rancho Dominguez facility. However, Mr. Garcia alleges it was his physical disability and subsequent need for medical leave that were the true motivation for Defendant's refusal to allow Mr. Garcia to return to work, and ultimate Defendant's termination of Mr. Garcia.

## II.   DEFENDANT ENGAGED IN UNLAWFUL EMPLOYMENT PRACTICES

Should this matter proceed to trial, Mr. Garcia will prove the following claims:

### A. Defendant's FEHA Violations

1. Disability Discrimination

Government Code sections 12940, *et seq.*, known as the Fair Employment and Housing Act ("FEHA"), make it unlawful for an employer in the State of California to harass, discriminate against, or discharge an employee based on her protected class, which includes a physical disability and/or medical condition. (Gov. Code section 12940, subd. (a).) Furthermore, FEHA imposes a duty upon employers to take adequate steps to ensure there is no discrimination, harassment, or retaliation occurring to protected classes of persons in their workplace. To establish a prima facie

case for unlawful discrimination, a plaintiff must show that (1) the individual was a member of a protected class, (2) the individual was qualified for the position the individual sought or was performing competently in the position the individual held, (3) the individual suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some circumstance suggests discriminatory motive. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.)

In this case, Mr. Garcia was a member of a protected class due to his disability resulting from medical complications arising between May and October of 2018. Mr. Garcia contends that the true motivation for his termination was his disability and that any other reasons given were simply pretextual. Logistics was put on notice of Mr. Garcia's disability through doctor's notes which required him to be off work during and after his surgeries. Mr. Garcia was able to perform all of the essential functions of his position prior to his medical leave and was able to continue to do so following his recovery. In fact, Mr. Garcia's termination makes no mention of poor work performance in any regard.

Despite this, Mr. Garcia was terminated while on medical leave, and exactly one week before he was set to return. What is noteworthy, is that Mr. Garcia was not terminated until he contacted Logistics. The circumstances of Mr. Garcia's termination clearly suggest it was done on the basis of Mr. Garcia's disability and subsequent need for accommodation.

    2.    <u>Failure to Engage in the Interactive Process</u>

Government Code section 12940, subdivision (n), makes it an unlawful employment practice for an employer to "fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." (Gov. Code § 12940 (n).) "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively." (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013.) "Typically, the employee must initiate the process "unless the disability and resulting limitations are obvious." (*Ibid.*) But once the process has been initiated, "the employer's obligation to engage in the process in good faith is continuous. '[T]he employer's obligation…extends beyond the first attempt at the accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed. This rule fosters the framework of cooperative problem-solving contemplated by the ADA, by encouraging employers to seek to find accommodations that really work.'" (*Ibid., quoting Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128, 1138.)

Mr. Garcia maintained open and continuous communication with Logistics during his medical leave in order to keep his Employer apprised of all updates regarding his medical status. Logistics maintained an obligation to *continuously* engage in this process with Mr. Garcia. However, <u>Logistics failed to do so even once</u>. The only response provided to Mr. Garcia in response to his attempt to return to work was a single email stating that the Logistics did not have

Johnny Garcia v. List Logistics
May 20, 2019
Page 4 of 7

a position that could accommodate his restrictions. Logistics failed to demonstrate a single good faith attempt to identify any reasonable accommodations or available positions within the company for Mr. Garcia to work at, instead merely obstructing Mr. Garcia's return to work without providing more than a single sentence in response.

Consequently, Logistics failed to engage in the interactive process with Mr. Garcia in violation of the FEHA.

### 3. Failure to Make Reasonable Accommodation

Under the FEHA, it is an unlawful employment practice for an employer to fail to accommodate an employee with a known disability. (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54). An employer's failure to accommodate creates an additional cause of action independent from disability discrimination. (*Ibid.*) A reasonable accommodation envisions a cooperative exchange of information between the employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950.)

As above, Logistics failed to attempt to engage in any meaningful discussion with Mr. Garcia regarding his restrictions, instead unilaterally concluding that he could not be accommodated in any position. Mr. Garcia's restrictions did not impede him from performing the essential functions of his positions as Inventory and Receiving Manager, yet even if they did, Logistics made no attempt to discuss or consider how a reasonable accommodation could allow Mr. Garcia to perform these essential functions.

Consequently, Logistics failed to make reasonable accommodation for Mr. Garcia in violation of the FEHA.

### 4. Retaliation

Under the FEHA, it is unlawful for an employer in the State of California to retaliate against an employee for engaging in a protected activity. (Gov. Code § 12940 subd. (h).) "[T]o establish a prima facie case for retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042, *citing Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 814-815, *citing also Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 476.)

Mr. Garcia engaged in multiple protected activities prior to his termination, including both going on medical leave pursuant to his work restrictions following multiple surgeries, and attempting to engage in the interactive process and seek reasonable accommodation from Logistics by providing his updated restrictions in an attempt to return to work. In direct response, Logistics refused to allow Mr. Garcia to return to work and ultimately terminated Mr. Garcia. Logistics's actions constitute retaliation in violation of the FEHA.

Johnny Garcia v. List Logistics
May 20, 2019
Page 5 of 7

5. Failure to Prevent Discrimination

Under the FEHA, it is unlawful for an employer to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring. (Gov. Code § 12940 subd. (k).) "Once an employer is informed of [harassment], the employer must take adequate remedial measures. The measures need to include immediate corrective action that is reasonably calculated to (1) end the current harassment and (2) to deter future harassment. [Citation.] The employer's obligation to take prompt corrective action requires (1) that temporary steps be taken to deal with the situation while the employer determines whether the complaint is justified and (2) that permanent remedial steps be implemented by the employer to prevent future harassment." (*Bradley v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1612, 1630.)

As above, Logistics, by and through its agents and/or employees Rich Hvozdovic and Allison Davis, discriminated against Mr. Garcia by preventing his return to work and terminating him on the basis of his disability. Logistics condoned, ordered, encouraged and/or ratified the conduct of its agents, rather than taking affirmative steps to prevent their discriminatory actions. Consequently, Logistics failed to prevent discrimination against Mr. Garcia from occurring in violation of FEHA.

As a result of Logistics's violations of FEHA, which ultimately resulted in his termination, Mr. Garcia seeks general and compensatory damages in the form of two years' lost earnings at the rate Mr. Garcia was scheduled to receive as of August 19, 2018, or [($52,000 annually) x (2 years)] = one hundred and four thousand dollars (**$104,000.00**). Further, Mr. Garcia seeks past lost wages to-date from the time he was able to return to work on January 28, 2019 through the present, or as of today, [($52,000 annually) x (112 days / 365 days)] = fifteen thousand nine hundred and fifty-six dollars and sixteen cents (**$15,956.16**).

## B. Wrongful Termination in Violation of Public Policy and Intentional Infliction of Emotional Distress

Under California law, "at-will employees may recover tort damages from their employers if they can show that they were discharged in contravention of fundamental public policy." (*Green v. Ralee Engineering Co.* (1998) 960 P.2d 1046, 1048 [citing *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 177.].) A plaintiff who asserts such a claim must show that the important public interests they seek to protect are "tethered to fundamental policies that are delineated in constitutional or statutory provisions." (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095.) Retaliation in violation of FEHA falls well within this rubric. (*Id.* at pp. 1096-1097; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1153.)

Mr. Garcia was terminated due to, and in retaliation for, his disability and ensuing need for medical leave and reasonable accommodation. California public policy expressly disproves of Logistic's actions, as the FEHA clearly states that "[i]t is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of [membership in a protected class, including]…physical disability…" (Gov. Code § 12920.)

Mr. Garcia continues to suffer emotional distress as a result of Logistics's actions. "A cause of action for intentional infliction of emotional distress exists where there is '(1) extreme and outrageous conduct by defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050, *quoting Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001.) Conduct is "outrageous" where it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Potter*, 6 Cal.4th at p. 1001.)

Mr. Garcia seeks damages in the amount of fifty thousand dollars (**$50,000.00**) for his emotional distress attributed to Logistics's extreme and outrageous conduct. Mr. Garcia will also pursue punitive damages due to Logistics's intentional and malicious conduct of ratifying the discrimination and retaliation and/or allowing such discrimination and retaliation to go unabated.

### C. Unfair Business Practices

Under Business & Professions Code sections 17200, et seq., the California Unfair Trade Practices Act (hereinafter "Unfair Competition Law" or "UCL") requires employers to abide by the Labor Code as well as FEHA. (Bus. & Prof. Code § 17200, et seq.) Particularly, "[s]ection 17203 expressly authorizes orders necessary to restore money or property to any person in interest from whom the money or property has been obtained through an unfair business practice." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 168.) The employee working at the company at issue is a recognized "person in interest" under the UCL. (*Id.*) The chief requirement is that the plaintiff show that "any finding of unfairness to competitors under section 17200 [is] tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 186-187.)

As alleged above, Logistics engaged in unlawful, deceptive, and unfair business practices prohibited by Business and Professions Code sections 17200, et seq., including those set forth in the preceding and foregoing paragraphs of this letter, thereby depriving Mr. Garcia of the minimum working standards and conditions due to him under California labor laws.

### D. Mr. Garcia Is Entitled to Penalties, Interest, and Attorneys' Fees

Mr. Garcia is entitled to penalties and interest at 10% per annum on his unpaid wages and other violations from the time they were due until paid in full. Additionally, if Mr. Garcia is successful on his wage and hour and FEHA claims at trial, he will be entitled to his attorneys' fees and costs. If this matter proceeds to trial, fees could exceed one hundred thousand dollars ($100,000.00).

### E. Total Damages

The total amount to which Mr. Garcia is currently entitled to is calculated as the following:

| DAMAGES | AMOUNT |
|---|---|
| Future loss of earnings | $104,000.00 |
| Past loss of earnings | $15,956.16 |
| Emotional Distress | $50,000.00 |
| **TOTAL** | **$169,956.16** |

Based upon the above, the potential exposure to Logistics is approximately one hundred sixty-nine thousand nine hundred and fifty-six dollars and sixteen cents (**$169,956.16**). This does not include an award of attorneys' fees and costs, the interest on Mr. Garcia's lost earnings, unfair business practices; and potential punitive damages.

### III.   CONCLUSION

Notwithstanding the above, Mr. Garcia is willing to resolve his claims in a fair, equitable, and expedient manner. To that end, Mr. Garcia has authorized our office to make the following settlement offer:

1) Defendant pays Mr. Garcia the sum of one hundred twenty thousand dollars (**$120,000.00**), inclusive of his attorneys' fees and costs;
2) Mr. Garcia will execute a full and complete general release, including a 1542 waiver; and
3) The agreement will be confidential (subject to certain standard exceptions).

Please respond to this correspondence by **June 3, 2019**. I can be reached at (562) 590-5550. Absent your response, my office will move forward with protecting Mr. Garcia's available legal rights. Thank you for your anticipated cooperation.

Very truly yours,

Joshua Klein, Esq.
**MAHONEY LAW GROUP, APC**